# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| SARAH CHILDS, a.k.a. SARAH HENDERSON, <br><br> Plaintiff, <br><br> – Versus – <br><br> CITY OF DENHAM SPRINGS, et al. <br><br> Defendants. | NUMBER: 3:12-cv-795 <br><br> JUDGE: <br><br> MAGISTRATE JUDGE: |

# MEMORANDUM IN SUPPORT OF
# TRO/PRELIMINARY INJUNCTION

## Table of Contents

Introduction .................................................................................................. 1

Facts ............................................................................................................. 1

Legal Argument ........................................................................................... 5

    I.    Henderson is likely to succeed on the merits of her claims.................... 5

        A.    Defendants directly violated Childs' First Amendment
              rights by forcing her to remove her display................................ 5

            i.    Childs' display is protected expressive activity................. 6

            ii.    The City has no compelling interest in
                  censoring Childs................................................................. 7

        B.    Defendants unlawfully retaliated against Childs
              for her First Amendment-protected activity............................... 8

            i.    Childs' display is constitutionally protected.................... 10

            ii.    The City's actions have had a chilling effect on
                  Childs' activities............................................................. 10

            iii.    The City's actions were substantially motivated
                  by Childs' First Amendment-protected conduct ............. 11

        C.    Defendants violated Childs' Fourteenth Amendment
              right to due process................................................................... 11

    II.    Without a TRO and preliminary injunction, Childs will be
          irreparably harmed ................................................................................ 12

    III.    The injury to Childs' First and Fourteenth Amendment
           rights outweighs any harm an injunction may cause the City ........... 13

    IV.    The public interest will be served by a TRO ........................................ 13

Conclusion .................................................................................................. 14

## Table of Authorities

**Cases**:

*American Civil Liberties Union v. Johnson*,
   194 F.3d 1149 (10th Cir. 1999) ................................................................ 13

*Brown v. Entm't Merch. Ass'n*, 131 S. Ct. 2729 (2011) ................................................ 7

*Cohen v. California*, 403 U.S. 15 (1971) ............................................................. passim

*Colson v. Grohman*, 174 F.3d 498 (5th Cir. 1999) ....................................................... 8

*Davis v. Williams*, 598 F.2d 916 (5th Cir. 1979) ....................................................... 7

*Deerfield Medical Ctr. v. City of Deerfield Beach*,
   661 F.2d. 328 (5th Cir. 1981) ................................................................ 12

*Elrod v. Burns*, 427 U.S. 347 (1976) ................................................................ 12

*Erznoznik v. City of Jacksonville*, 422 U.S. 205 (1975) ............................................... 8

*Forum for Academic & Inst. Rights v. Rumsfeld*,
   390 F.3d 219 (3d Cir. 2004) ............................................................... 12, 14

*G&V Lounge, Inc. v. Mich. Liquor Control Comm'n*,
   23 F.3d 1071 (6th Cir. 1994) ............................................................... 14

*Keenan v. Tejeda*, 290 F.3d 252 (5th Cir. 2002) .............................................. 8, 9, 10

*Marbury v. Madison*, 1 Cranch 137 (1803) ............................................................. 7

*McWaters v. Federal Emergency Mgmt. Agency*,
   408 F. Supp. 2d 221 (E.D. La. 2006) ........................................................ 5

*Mendocino Environmental Ctr. v. Mendocino County*,
   192 F.3d 1283 (9th Cir. 1999) .............................................................. 10

*Mississippi Women's Medical Clinic v. McMillan*,
   866 F.2d 788 (5th Cir. 1989) ............................................................... 8

*Perry v. Sindermann*, 408 U.S. 593 (1972) ............................................................ 9

*Smith v. Plati*, 258 F.3d 1167 (10th Cir. 2001) ................................................. 10, 11

*Snyder v. Phelps*, 131 S. Ct. 1207 (2011) ................................................................... 7

*Speaks v. Kruse*, 445 F.3d 396 (5th Cir. 2006) ........................................................... 5

*Springtree Apartments, ALPIC v. Livingston Parish Council*,
    207 F. Supp. 2d 507 (M.D. La. 2001) ............................................................ 12

*United States v. Stevens*, 130 S. Ct. 1577 (2010) ....................................................... 7

*Valley v. Rapides Parish School Board*,
    118 F.3d 1047 (5th Cir. 1997) ........................................................................ 14

*Zinermon v. Burch*, 494 U.S. 113 (1990) ................................................................. 11

**Treatises**

Charles Alan Wright, Arthur R. Miller & Mary Kay Kane,
*Federal Practice and Procedure* (2d Ed. 1995) ........................................................ 12

**Introduction**

The City of Denham Springs waded into a personal dispute between neighbors solely to impose its own standards of decency upon Plaintiff Sarah Childs. In doing so, City officials not only violated Childs' rights to free speech and due process, they also turned their provincial indignation over a petty squabble into a federal civil rights case. This Court should see the City's fretful meddling for what it is, and end it.

**Facts**

On or about Tuesday, November 27, 2012, as part of an ongoing disagreement with her neighbors, Plaintiff and Denham Springs resident Sarah Childs installed on the roof of her home a string of holiday lights in the shape of a human hand with an extended middle finger. The display looked like this:



The neighbors complained to the City, allegedly contacting both the Mayor, Defendant Jimmy Durbin, and the Chief of Police, Defendant Scott Jones. In response, the Denham Springs Police Department dispatched Corporal Shawn Perkins to the scene. Upon arrival, Perkins pressured Childs to remove the lights, suggesting the display violated Denham Springs' "obscenity statute" and could

1

subject Childs to a substantial fine. Perkins then attempted to remove some of the lights himself by pulling on a nearby strand, but relented after Childs complained that he might break them. Finally, Perkins told Childs that if she wanted to keep her display, it would have to be something less offensive. Perkins admitted as much to the Baton Rouge *Advocate* a few days later: "Cpl. Shawn Perkins said they had a discussion about First Amendment rights and the city's obscenity statute, and he told her that if she insisted on putting something up as a message to neighbors, it would have to be less offensive." *The Advocate*, "Woman Removes Lighted Finger Off Roof." November 28, 2012, http://theadvocate.com/news/4532114-123/woman-removes-lighted-finger-off, last visited December 18, 2012.

Fearing a citation and hefty fines, Childs removed the lights, but the case garnered some local media attention, *supra*, which, in turn, drew the attention of the ACLU of Louisiana. The ACLU sent an open letter, attached to Plaintiff's Complaint as **P-1**, to Police Chief Jones, in which it defended both Childs' lighting scheme and her First Amendment rights. The ACLU also pointed out that Denham Springs appears not to have an "obscenity statute," and that such a statute would be unconstitutional anyway.

Denham Springs City Attorney Paeton Burkett responded via email,[1] defending the City's objection to Childs' display not with legal argument, but with a

---

[1] At the time of their exchange, the ACLU considered the various emails between Executive Director Marjorie Esman and City Attorney Burkett confidential. Both Burkett and Esman are lawyers, and Esman shared the emails only with ACLU Senior Staff Attorney Justin Harrison, who is undersigned counsel on this matter. The ACLU neither provided *The Advocate* the emails nor consented to their publication. That said, the emails – including Burkett's concession – are now a matter of public record.

2

fretful appeal to public decency. At the outset, she wisely *conceded that Childs' display was legal*:

> 'I would hate to see this lady re-erect such a display, which causes her such conflict with her neighbors,' Burkett says in the email to the ACLU. 'No one wants to be 'that' person in a neighborhood.'
>
> 'In my opinion these actions could cause continuing embarrassment to Ms. Henderson, her friends and family,' Burkett says in the email.
>
> 'I would think that sometimes you have to appeal to someone's moral compass and hope they do the right thing, *even if it isn't illegal per se*,' Burkett's email says.

*The Advocate*, "Denham Springs, ACLU trade slaps on 'bird' display"

http://theadvocate.com/home/4548617-125/denham-springsaclu-trade-slapson-bird, Nov. 29, 2012, last visited December 19, 2012 (emphasis added). Despite admitting that Childs had broken no laws, however, Burkett did not promise that Childs would be left alone.

At any rate, on Thursday, December 14, 2012, Childs put her lighted display back up, this time with two hands, each with its middle finger extended. Childs did not turn the lights on, however, as she still was concerned about retaliation by the City. When the ACLU found out Childs had reinstalled the display, it immediately sent another letter, attached to Childs' complaint as **P-2**, to City Attorney Burkett, reminding the City that Childs' display was protected by the First Amendment.

Childs' neighbors again complained, and the City again responded. First, they retaliated against Childs by collateral attack, issuing her a flurry of summonses not for her lights, but for anything else about which her neighbors were willing to complain:

3

a. The neighbors complained that Childs, while walking down the side of the street, did not get far enough out of the way of a following car, so the City ticketed her for obstructing the flow of traffic.

b. Neighbors complained that Childs, while singing and dancing in her driveway – her own private property – early one evening, made up an impromptu song about her neighborhood dispute, so the City ticketed her for disturbing the peace.

c. Childs' impromptu song allegedly contained some "obscenities" directed at her neighbors, so the City cited her for *simple assault*.

Undeterred, Childs called the police to report that her neighbors were making false allegations about her. This caused the City to retaliate directly. Officer John Doe appeared at Childs' house on the afternoon of December 16, 2012, but rather than take her complaint, Doe simply ordered Childs to take her lights down. Doe did not tell Childs what law she was violating or issue her a citation of any kind; he simply told her to remove the lights then and there. Childs initially refused to remove the display or provide Officer Doe any more information, but Doe grew agitated and told Childs that unless she took down the lights immediately, she would be arrested and taken to jail. Afraid of arrest and incarceration, Childs climbed up on the housetop and removed the lights. She has not put them back up. Seeking to vindicate her First and Fourteenth Amendment rights, and wishing to reinstall her display by Christmas, Childs now brings this matter.

4

**Legal Argument**

Preliminary relief is appropriate when a petitioner demonstrates "(1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest." *Speaks v. Kruse*, 445 F.3d 396, 399-400 (5th Cir. 2006). "When analyzing the degree of 'success on the merits' that a movant must demonstrate to justify injunctive relief, the Fifth Circuit employs a sliding scale involving the balancing the hardships associated with the issuance or denial of a preliminary injunction with the degree of likelihood of success on the merits." *McWaters v. Federal Emergency Mgmt. Agency*, 408 F. Supp. 2d 221, 228 (E.D. La. 2006). "Moreover, when the other factors weigh in favor of an injunction, a showing of some likelihood of success on the merits will justify temporary injunctive relief." *Id*. As set forth below, Childs easily meets the relevant standard.

**I.　Henderson is likely to succeed on the merits of her claims.**

**A.　Defendants directly violated Childs' First Amendment rights by forcing her to remove her display.**

Two Denham Springs police officers ordered Childs to remove her lighted display. The first officer told her the display violated a nonexistent municipal "obscenity statute" and that she would be fined if she refused to remove it; the second officer made Childs climb onto her roof and remove the display while he watched, threatening to put her in jail if she didn't. The City endorsed those

5

measures, defending in correspondence and in the media their efforts to cow Childs into compliance, even as their own attorney acknowledged the legality of Childs' conduct. The City's heavyhanded "Bah... Humbug" is little more than government censorship in the name of good manners, and it violates the First Amendment.

### i. Childs' display is protected expressive activity.

The First Amendment forbids the government from punishing speech it deems offensive. *Cohen v. California*, 403 U.S. 15, 26 (1971). Indeed, the Supreme Court's straightforward holding in *Cohen* completely resolves this matter. There, the Court overturned the disturbing the peace conviction of a man who had entered the crowded, public lobby of a municipal courthouse wearing a jacket bearing the words "Fuck the Draft." *Id*. The Court wrote: "absent a more particularized and compelling reason for its actions, [a] State may not, consistently with the First and Fourteenth Amendments, make the simple public display ... of [a] four-letter expletive a criminal offense." *Id*. The Court explained:

> while the particular four-letter word being litigated here is perhaps more distasteful than most others of its genre, it is nevertheless often true that one man's vulgarity is another's lyric. Indeed, we think it is largely because governmental officials cannot make principled distinctions in this area that the Constitution leaves matters of taste and style so largely to the individual.

*Id*. at 25.

Since then, the force of the First Amendment as a shield against tin-pot dictatorialism in the name of public decency has only grown stronger. Indeed, in recent years, the Court repeatedly and forcefully has reminded would-be government censors that First Amendment protection of controversial, distasteful or

6

offensive speech remains as robust as it was in *Cohen*'s day. *See Brown v. Entm't Merch. Ass'n,* 131 S. Ct. 2729 (2011) (invalidating a California state ban on the sale of violent video games to minors); *Snyder v. Phelps*, 131 S. Ct. 1207 (2011) (shielding hateful and repugnant protest speech at military funerals); *United States v. Stevens*, 130 S. Ct. 1577 (2010) (protecting grotesque depictions of animal cruelty). In *Stevens*, the Court went so far as to invoke the Framers of our Constitution and some of this Nation's earliest jurisprudence:

> The First Amendment itself reflects a judgment by the American people that the benefits of its restrictions on the Government outweigh the costs. *Our Constitution forecloses any attempt to revise that judgment simply on the basis that some speech is not worth it*. The Constitution is not a document "prescribing limits, and declaring that those limits may be passed at pleasure."

*Id.* (emphasis added), *quoting Marbury v. Madison*, 1 Cranch 137, 178 (1803).

Furthermore, even if *Cohen*'s straightforward applicability were not enough to resolve this matter, the Fifth Circuit explicitly has recognized the expressive nature of a middle finger extended in defiance or protest: "The thumbed nose, *the projected middle finger*, the Bronx cheer, the grimace and the smile are all conduct intended to convey a message that is sometimes made even more expressive by its bold freedom from a garb of words." *Davis v. Williams*, 598 F.2d 916, n.5 (5th Cir. 1979) (Emphasis added). In light of that acknowledgement, Childs' lighted display is certainly protected speech.

### ii. The City has no compelling interest in censoring Childs.

To force Childs to remove her lights, the City has to show a compelling interest in regulating the content of Childs' message to her neighbors. *Cohen* at 26.

7

It can't. The City has informally articulated a few interests in forcing Childs to remove her display, including "neighborhood harmony"[2]; preventing residents from viewing offensive things[3]; and preventing neighborly conflict.[4] But even if simple common welfare is the City's business, those stated interests are not *compelling interests*, and so do not clear the First Amendment hurdle. *Cohen* at 20. Indeed, the Fifth Circuit has said so in simple terms: "[T]he Constitution does not permit government to decide which types of otherwise protected speech are sufficiently offensive to require protection for the unwilling listener or viewer ... the burden normally falls upon the viewer to 'avoid further bombardment of [his] sensibilities simply by averting [his] eyes.' *Mississippi Women's Medical Clinic v. McMillan*, 866 F.2d 788, 795 (5th Cir. 1989), *quoting Erznoznik v. City of Jacksonville*, 422 U.S. 205, 210-11 (1975). Here, the City and its residents would be well advised to follow the Fifth Circuit's admonition and simply look away.

> **B. Defendants unlawfully retaliated against Childs for her First Amendment-protected activity.**

The First Amendment also prohibits governmental retaliation against an individual for her exercise of protected speech. *Colson v. Grohman*, 174 F.3d 498, 508 (5th Cir.1999); *see also Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002). The Fifth Circuit explained in *Keenan*, "if government officials were permitted to impose serious penalties in retaliation for an individual's speech, then the government would be able to stymie or inhibit his exercise of rights in the future and thus obtain

---

[2] *The Advocate*, "'Bird' may fly again over roof, ACLU says" http://theadvocate.com/news/4539452-123/bird-mayfly-again-over-roof, November 28, 2012, last visited December 19, 2012.
[3] *The Advocate*, "Woman removes lighted 'finger' off roof," *supra*.
[4] *The Advocate*, "Denham Springs, ACLU trade slaps on 'bird' display," *supra*.

8

indirectly a result that it could not command directly." *Id.* at 258, *citing Perry v. Sindermann*, 408 U.S. 593, 597 (1972).

The Fifth Circuit's opinion in *Keenan* is directly on point here. In that case, two Texas police deputies quit their jobs after learning of their police department's illegal activities, then reported the conduct to a local TV station. *Id.* at 256. A short time later, the police chief and several officers began a pattern of harassment against the two men, ranging from unjustified traffic stops to a near-violent confrontation. *Id.* at 256-257. The former deputies sued, and the trial court granted summary judgment in favor of the police chief, but the Fifth Circuit reversed. In restoring the matter for trial, Judge Edith Jones explained the law of retaliation:

"To establish a First Amendment retaliation claim against an ordinary citizen, that citizen must show that (1) plaintiffs were engaged in constitutionally protected activity, (2) the defendants' actions caused them to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendants' adverse actions were substantially motivated against the plaintiffs' exercise of constitutionally protected conduct." *Id. at* 258.

Childs succeeds on all three elements: (1) Her holiday display is protected by the First Amendment; (2) as soon as she installed the display, Denham Springs police began a pattern of harassment, culminating with a Denham Springs police officer forcing her to remove the display under threat of incarceration; (3) the City's actions, particularly the officer's threat of jail, were directly related to the holiday display.

9

### i. Childs' display is constitutionally protected.

As briefed at I.A.i., *supra*, Childs' display is indisputably protected by the First Amendment.

### ii. The City's actions have had a chilling effect on Childs' activities.

The Fifth Circuit addressed this directly in *Keenan*, noting that the defendants' pattern of unlawful traffic stops and other forms of harassment there would be sufficient to curtail the First Amendment-protected activity of a person of ordinary sensibility. ".... [S]ince there is no justification for harassing people for exercising their constitutional rights [the effect on freedom of speech] need not be great in order to be actionable. The district court correctly ruled that a retaliation claim requires *some showing that the plaintiffs' exercise of free speech has been curtailed.*" *Keenan* at 259.

Not only did Childs face the same pattern of police harassment and unwarranted citation here, in the end, her activity was curtailed directly when the police told her to take her lights down or go to jail. Moreover, the *Keenan* Court made it clear that it does not matter that Childs withstood the City's initial harassment. *Id.* at 260 ("the plaintiffs have sufficiently averred that they were deprived of a constitutional right, even though they were not completely silenced), *citing Mendocino Environmental Ctr. v. Mendocino County*, 192 F.3d 1283, 1300 (9th Cir. 1999) ("[I]t would be unjust to allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in his protected activity"); *Smith v. Plati*, 258 F.3d 1167, 1177 (10th Cir.

10

2001) ("The focus ... is upon whether a person of ordinary firmness would be chilled, rather than whether the particular plaintiff is chilled.").

> iii. **The City's actions were substantially motivated by Childs' First Amendment-protected conduct.**

Childs easily meets this factor too, as she was told by Denham Springs police on two separate occasions that if she didn't take her Christmas lights down, she would face criminal penalties. On the second occasion, the officer would not even tell her what law she was breaking – understandable, as there isn't one; he simply ordered her to take the lights down or be taken to jail. The officers did not even bother to hide their motivations behind some pretext; their actions on both occasions were directed specifically at Childs' holiday display.

> C. **Defendants violated Childs' Fourteenth Amendment right to due process.**

The government must give notice and some kind of hearing before depriving someone of liberty or property. *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). Here, Childs indisputably has a liberty interest in how she decorates her home for the holidays, *supra*, but she received neither notice of wrongdoing nor an opportunity to defend herself before that interest was taken away. Defendants first threatened to punish her under the City's "obscenity statute," but it turned out the ordinance didn't exist. Then, a uniformed police officer simply appeared at her residence and, without issuing her a citation or telling her what law she had broken, commanded her to take her holiday lights down or face jail. In doing so, they violated Childs' rights to both procedural and substantive due process.

11

For all of the above reasons, Childs is likely to succeed on the merits of her claims.

## II. Without a TRO and preliminary injunction, Childs will be irreparably harmed.

"Violation of constitutional rights constitutes irreparable injury as a matter of law." *Springtree Apartments, ALPIC v. Livingston Parish Council*, 207 F. Supp. 2d 507, 515 (M.D. La. 2001). As the Supreme Court has noted, "the loss of First Amendment freedoms, even for minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *see also Deerfield Medical Ctr. v. City of Deerfield Beach*, 661 F.2d. 328 (5th Cir. 1981) ("we have already determined that the constitutional right of privacy is either threatened or is in fact being impaired and this conclusion mandates a finding of irreparable injury."); 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2948.1 (2d Ed. 1995) ("When an alleged constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary."). This reasoning essentially collapses the "likelihood of success on the merits" and "irreparable harm" prongs of the injunctive inquiry where constitutional rights are at stake. *Forum for Academic & Inst. Rights v. Rumsfeld*, 390 F.3d 219, 246 (3d Cir. 2004).

For every day that she has been forced, either by direct order or threat of retaliation, to leave her Christmas lights down, Childs has been irreparably harmed. For every day that threat of force remains, the harm will continue.

### III. The injury to Childs' First and Fourteenth Amendment rights outweighs any harm an injunction may cause the City.

The City has no legitimate interest in forcing Childs to remove her display, where such enforcement harms Childs' protected First and Fourteenth Amendment rights. *American Civil Liberties Union v. Johnson*, 194 F.3d 1149 (10th Cir. 1999) (upholding the district court's issuance of a TRO and noting that "the threatened injury to Plaintiffs' constitutionally protected speech outweighs whatever damage the preliminary injunction may cause Defendants' inability to enforce what appears to be an unconstitutional statute") Here, while the City has an obligation to prevent and respond to unlawful behavior, there is nothing about Childs' display that is unlawful. Moreover, the City has an obligation to protect Childs and her First Amendment right to install her lighted display per her own tastes. Therefore, any harm to the City under a temporary restraining order will be minimal. The City will, at most, have to tolerate Childs' display, and it will have to consider more carefully the constitutionality of its efforts to suppress the speech of its residents.

### IV. The public interest will be served by a TRO.

A temporary restraining order will serve the public interest, as the public interest is always served by ensuring the government's compliance with the Constitution and civil rights laws. *See*, *e.g.*, *Valley v. Rapides Parish School Board*, 118 F.3d 1047, 1056 (5th Cir. 1997) (finding that public interest would be undermined if the unconstitutional actions of a school board were permitted to stand); *G&V Lounge, Inc. v. Mich. Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994) (holding that it is always in the public interest to prevent violation of

13

constitutional rights); *Forum for Acad. & Inst. Rights*, *supra*, ("The public interest is best served by enjoining a statute that unconstitutionally impairs First Amendment rights.").

**Conclusion**

For the reasons set out above, this Court should issue a temporary restraining order and preliminary injunction prohibiting Defendants from punishing Childs for her lighted display or retaliating against her for installing it.

Respectfully submitted by:

| | |
|---|---|
| /s/ Justin Harrison | /s/ Ron Wilson |
| Justin P. Harrison, La No. 33575 | Ronald L. Wilson |
| Senior Staff Attorney | Attorney at Law |
| ACLU FOUNDATION OF LOUISIANA | 701 Poydras Street |
| P.O. Box 56157 | Suite 4100 |
| New Orleans, Louisiana 70156 | New Orleans, Louisiana 70139 |
| Telephone: (504) 522-0628 | Telephone: (504) 525-4361 |
| Facsimile: (888) 534-2996 | Facsimile: (504) 525-4380 |

Attorneys for Plaintiff